. JOHN LEAVITT *vs.* CHARLES FAIRBANKS.

Piscataquis.   Opinion March 11, 1899.

92  521
96  345

*Sales.   Waiver. ` Ratification.   Estoppel.*

The defendant bought a horse of a third person who was in possession of the animal, claiming to be the owner thereof, and without knowledge or notice of the plaintiff's title. The plaintiff gave no notice to the defendant of his title until seventeen months after learning of the sale, and instead of making a demand for the horse or its value, he wrote several letters to the person who had made the sale in regard to an adjustment of the matter and received four payments on account from him. In an action of trover, *held;* that the plaintiff had waived all objection to thus disposing of the horse, and had ratified and confirmed the sale.

*Also;* that by reason of the plaintiff's long silence when he should have spoken, if he intended to assert his claim against the defendant, the latter was thereby deprived from taking prompt measures to protect himself against loss, and the plaintiff is estopped from maintaining his action.

ON MOTIONS BY DEFENDANT.

This was an action of trover, commenced by writ, September 4, 1896, to recover the value of a mare, claimed to have been the property of the plaintiff, and alleged to have been converted by the defendant on October 31, 1894. The case was tried to a jury in Piscataquis county on the second day of the September term, 1897, and resulted in a verdict for the plaintiff, for $33.10. The case came to this court on two motions; first, a general motion for a new trial; second, on the ground of newly-discovered evidence, filed at the February term, 1898.

Defendant pleaded the general issue and filed a brief statement denying the plaintiff's title to the property.

The facts are stated in the opinion.

*J. S. Williams*, for plaintiff.

Defendant cannot prevail by showing title in third parties. 7 Lawson, Rights and Remedies, p. 5665, and cases; 26 Am. & Eng. Ency. p. 716 (Trover.)

One who buys property must, at his peril, ascertain the ownership; and if he buys of one who has no authority to sell, his taking possession, in denial of the owner's right, is a conversion. *Miller* v. *Thompson*, 60 Maine, 322; *Gilmore* v. *Newton*, 9 Allen, 171; *Webber* v. *Davis*, 44 Maine, 147; 7 Lawson, Rights & Remedies, p. 5689, and citations; and it is no answer that the purchaser believed in good faith that the seller was the owner. *Porter* v. *Foster*, 20 Maine, 391; *Baker* v. *Page*, 11 Maine, 381.

Purchasing a horse from one in good faith, who had no right to sell him, and subsequently exercising dominion over him will amount to a conversion, and no demand by the owner is necessary before commencing an action therefor. *Gilmore* v. *Newton*, 9 Allen, 171.

*A. M. Goddard*; *J. Williamson, Jr.*, and *L. A. Burleigh*, for defendant.

Estoppel: *Pickard* v. *Sears*, 6 Ad. & E. 469; Roberts on Frauds, p. 130; Bigelow on Estoppel, (5th ed.) p. 556; *Hope* v. *Lawrence*, 50 Barb. 258; *Turner* v. *Kennedy*, 58 N. W. Rep. 823.

It is not incumbent upon the defendant in this case to show that the plaintiff intended to work any hardship upon the defendant by his long continued silence. "It is not necessary to an equitable estoppel that the party design to mislead." *Bank* v. *Hazard*, 30 N. Y. 226,

"Where one assumes to act for another without authority, and makes a contract disposing of his property, if the latter, with a knowledge of what has been done, ratifies the contract, it will bind him, and a ratification may be shown by his acts, notwithstanding, he expressly declared he would not sanction it." *Hatch* v. *Taylor*, 10 N. H. 538.

" A vendor must exercise his right of election to affirm or dis-
affirm a fraudulent sale within a reasonable time after the discovery
of the fraud, and before the rights of innocent third parties become
involved." *Cullum* v. *Casey*, 9 Porter, 131, (33 Am. Dec. 305,
and cases there cited.)

New trial: *Putnam* v. *Woodbury*, 68 Maine, 58. In this case
the newly-discovered evidence was within the knowledge of the
plaintiff and he suppressed it. Counsel also cited: *Strout* v.
*Stewart*, 63 Maine, 227.

Defendant may disprove plaintiff's title by showing a paramount
title in a stranger, or otherwise; or he may prove facts showing a
license; or a subsequent ratification of the taking, etc., 2 Greenl.
Ev. (15th ed.) § 648, and cases.

SITTING: PETERS, C. J., HASKELL, WHITEHOUSE, WISWELL,
SAVAGE, FOGLER, JJ.

WHITEHOUSE, J.   The verdict in this case is manifestly wrong.
It was an action of trover for the conversion of a horse. The
verdict was for the plaintiff, and the case comes to this court on a
motion to set it aside as against the evidence, accompanied by a
second motion for the same purpose based on newly-discovered evi-
dence.

The defendant purchased the horse in good faith of Corydon A.
Sawyer, of Vienna, the husband of the plaintiff's niece. The
plaintiff resided in Guilford, and in August, 1894, owned the mare
in question, but allowed Sawyer to take her to Vienna, as he says,
to keep until the following May, to be returned " all sound and
smooth as she was then   .   .   .   .   or money to make her so."

On the twelfth day of November following, Sawyer being still
rightfully in possession of the mare, and claiming to own her, sold
and delivered her to the defendant, who had no knowledge of the
plaintiff's title, and no reason to suspect it.   The plaintiff learned
of the sale in January following, but gave the defendant no notice
of his title until June 20, 1896, nearly seventeen months after-
wards.   In the meantime instead of making a demand upon the

defendant for his horse or the value of her, the plaintiff wrote several letters to Sawyer in regard to an adjustment of the matter, and received from him four payments amounting in the aggregate, according to the plaintiff's own admission, to at least $45, on account of the horse.

From this evidence of the plaintiff's conduct, considered in the light of the relationship and friendly feelings between Sawyer and himself, the inference is irresistible that he waived all objection to the act of Sawyer in thus disposing of the horse and intended to ratify and affirm the transactions and rely upon Sawyer for payment.    Furthermore, by reason of the plaintiff's long silence when he should have spoken, if he intended to assert his claim against the defendant, the latter was deprived of the opportunity to take prompt measures to protect himself against loss, and the doctrine of estoppel can now equitably be invoked for the defendant's protection.

But the newly-discovered evidence strikingly illustrates the strength of the presumptive evidence above relied upon, and the wisdom of the doctrine of equitable estoppel.    The defendant finally succeeded in obtaining the testimony of Sawyer, who was out of the state at the time of the trial, together with the plaintiff's letter to Sawyer in relation to the mare:—and for failure to obtain this evidence at the trial neither the defendant nor his attorneys appear to be chargeable with a want of reasonable diligence.

According to Sawyer's testimony it was distinctly understood between the plaintiff and himself when he took the mare to Vienna, that he should sell her for the plaintiff if he had a chance; and this testimony is confirmed by the plaintiff's own letter to Sawyer of October 7, 1894, in which he expressly authorized Sawyer to " trade the mare into a larger pair," and pay the plaintiff what would be satisfactory to Sawyer.    It also appears from the plaintiff's letters to Sawyer on December 8, 1894, and April 23, 1895, that he fully and effectually ratified the sale of the mare to the defendant Fairbanks and accepted Sawyer as paymaster, after he had received definite knowledge of the terms of that sale.

Upon this evidence it is clear that the plaintiff's action against Fairbanks for the conversion of the horse is not maintainable, and it would be gross injustice to allow this verdict against him to stand.

The entry must therefore be,

*Motion sustained.*